THE PEOPLE EX REL. WILLIAM A. THROOP v̄. THOMAS F. LANGDON.

*Mere clerkships are not offices.*

An office is a special trust or charge created by competent authority; if not honorary, it has duties attached to it the performance of which are the consideration for its being conferred.

An officer is distinguished from an employee in the greater importance, dignity and independence of his position; in the requirement of an official oath and perhaps of a bond; in the liability to account for misfeasance and non-feasance, and usually in the tenure of his position.

40 MICH.—85.

The fact that a clerk is independent of his superior officer in the tenure of his position does not make him an officer also.

A public officer can define and change the duties of the clerks in his office if no rule of law or custom prevents.

A mere clerk is not an officer but an employee.

The "chief clerk" in the office of the assessor of the city of Detroit is not an officer.

Whether information in the nature of *quo warranto* lies in the case of any office not created by the State—Q.

Submitted April 16.    Decided April 24.

INFORMATION in the nature of *quo warranto*, alleging that Langdon was an intruder into the office of chief clerk in the assessor's office of Detroit, to which the relator Throop had been appointed by the common council January 22, 1879.    Four pleas were filed in bar of the information, and to each plea a replication was filed, and the second, third and fourth replications were demurred to, the first being merely a joinder in issue on the first plea, which alleged that the common council of Detroit had never, by resolution or otherwise, created the office of chief clerk of the assessor's office of the city of Detroit, either under or by virtue of the authority conferred by section two of the city charter, or by virtue of any other power or authority possessed by said council, and that no such office exists in the corporation known as the city of Detroit, and there is no such public office in said city, or in this State, and of this the said defendant puts himself upon the country.

The second plea, which is referred to in the statement of facts, runs thus: "And for a further plea in this behalf with reference to so much and such part of said information as charges this defendant with having entered into, used, exercised, claimed and usurped an office in the corporation of the city of Detroit, known as chief clerk of the assessor's office of the city of Detroit, without any legal election, appointment, warrant or authority therefor, this defendant says: That the said

city of Detroit is a municipal corporation in this State, under and by virtue of an act entitled "An act to revise the charter of the city of Detroit," approved February 5th, 1857, and the acts amendatory thereof; that by an ordinance relative to the city assessor and his assistants, approved December 30th, 1861, it was ordained by the common council of the said city, among other things, as follows:

"SEC. 7. The assessor is hereby authorized to employ such clerical assistance as the business of his office may render necessary, and such clerical assistants shall receive a compensation not exceeding the sum of one dollar and fifty cents per day for the time they are actually employed."

That by an ordinance approved March 22d, 1864, said section 7 was duly amended so as to read as follows:

"SEC. 7. The assessor is hereby authorized to employ such clerical assistance as the business of his office may render necessary, and such clerical assistants shall, for the time they are actually employed, receive such compensation per diem as the common council shall, from time to time, fix by resolution."

That from the time of the adoption of said original ordinance down to the year 1878, the clerks in the office of the city assessor were employed by the assessor without any intervention or interference on the part of the common council, and said power and authority were so exercised by him by virtue of his office and the ordinance aforesaid; that the following is a true copy of "An ordinance relative to the appointment of assistants, clerks and other employees," approved July 13, 1877:

"SEC. 1. It is hereby made the duty of each officer of the city, on qualifying for his office, and of each board or commission of the city, the appointment of whose assistants or other employees is vested in the common council, to submit to said common council the name or names of such person or persons as said officers, board or commission may desire to have appointed to any position in their respective offices, or under their control; also designating in the communication wherein such name or names are submitted the position or duty to which each of such persons is to be assigned.

"Sec. 2. It is hereby made the duty of every officer of the city, and of every board or commission of said city, the appointment of whose employees is vested in the common council, to report to the common council the resignation, incompetency, neglect of duty or other misconduct of any clerk, assistant or employee, with a recommendation as to the removal of such person or the appointment of a successor, in accordance with the provisions of section 1 of this ordinance.

"Sec. 3. This ordinance shall be construed to relate only to the employment of persons engaged in transacting business in the office or under the immediate supervision of the said officer, board or commission, and not to the employment of laborers or others not vested with any powers of agency directly from said officer, board or commission.

"Sec. 4. All ordinances wherein the power of appointment or nomination of assistants, clerks or other employees is vested in any officer, board or commission, as heretofore mentioned, and all other ordinances inconsistent with the provisions of this ordinance, are hereby repealed."

That at the time said ordinance of July 13, 1877, was adopted, the Hon. H. H. Leroy was city assessor, and there were five or six clerks in his office who had been employed by him, and they remained in his office with him until the expiration of his official term on the 20th day of March, 1878, at which time he was succeeded in office by the Hon. George W. Gilbert, the present city assessor of the city of Detroit; that on the 29th day of March, 1878, the said George W. Gilbert, as city assessor, transmitted the following communication to the common council of the said city: "To the Honorable the Common Council: GENTLEMEN,—I hereby recommend Thomas F. Langdon for chief clerk in the city assessor's office, and most respectfully ask your honorable body to appoint him to that position. GEORGE W. GILBERT, City Assessor." On the second day of April, 1878, the said nomination was confirmed by the common council by a vote on a call of the roll of fifteen yeas to ten nays; that this defendant thereupon duly qualified and entered upon the performance and discharge of his duties as chief clerk of the assessor's office, and claims to hold

the said office, and does hold it, with all its privileges, by virtue of such appointment and the authority thereof, as it was lawful and proper for him to do. And this defendant will continue to claim the said office until the expiration of the official term of George W. Gilbert as city assessor. Without this, that he in any way usurps said office, or entered into, used or exercised the same without warrant or authority of law; and this the said defendant is ready to verify.

The third plea runs thus: And for a further plea in this behalf with reference to so much and such part of said information as sets forth a pretended right in the relator, William A. Throop, to hold said office, this defendant says: That prior to said second Tuesday in January, 1879, the common council of the city of Detroit had duly passed and adopted the ordinance relative to the appointment of assistants, clerks and other employees set forth in the second plea above pleaded, and which ordinance was approved July 13th, 1877; that the common council of the said city has never fixed or prescribed the duties of the chief clerk, or of the other clerks in the assessor's office, but that, as a matter of fact, the duties of the chief clerk are those of a mere clerkship, and consist of writing out and copying the annual assessment rolls of the city from minutes and field notes furnished by the assessor and his assistants, and also certain special assessment rolls prepared in the office of the assessor; that the chief clerk has no official functions, powers or authority, and he does not act for or represent the assessor in the performance of any official act or duty; that the clerks in the office of the assessor are only necessary because the assessor and the two assistant assessors provided by the charter cannot do all the writing and copying required in the office; that the only distinction between the chief clerk and the other clerks in the office is, that the chief clerk gives out or divides the work among the other clerks, and

superintends their work for the purpose of making the force systematic and efficient, and of having the work properly performed; but the chief clerk cannot sign the name of the assessor, or determine any matter within his official judgment or discretion, and, in point of fact, is merely his chief amanuensis and copyist. This defendant admits that at a meeting of the council held on the 22d day of January, 1879, the following resolution was adopted by a vote on a call of the roll of fourteen yeas to eleven nays: "*Resolved,* That William A. Throop be and is hereby appointed chief clerk in the assessor's office." But this defendant says that said William A. Throop was not nominated by the city assessor, as required by the ordinance of July 13th, 1877, and that said ordinance was, and still is in full force and effect; and further, that at the then next session of the common council, the Hon. George C. Langdon, mayor of the city, sent to the council the following veto message:

"*To the Honorable the Common Council:*

GENTLEMEN,—I most respectfully return to your honorable body without my approval, each of the following resolutions adopted at your last session:

*Resolved,* That William A. Throop be and is hereby appointed chief clerk in the assessor's office.

[Here follow several resolutions purporting to appoint other persons to other positions.]

Under an ordinance authorizing it, the persons now holding the clerkships or positions mentioned in said resolutions were nominated and recommended by the controller, receiver of taxes and the assessor respectively, and said recommendations were concurred in by the common council.

The ordinance in question does not contemplate any change in the clerks appointed under it during the term of the officers making the nominations, except for misconduct reported by the officer to the common council. The ordinance only requires the heads of departments to recommend suitable persons for subordinate positions in their respective offices at the commencement of their official terms, and is based upon the theory that the responsible head of such office or department who has given bonds for the faithful execution of the duties of his office shall have a voice in the selection of his clerks

and assistants, for whose conduct he is officially responsible and subject to liability on his official bond.

I do not understand that the clerkships mentioned in the above resolutions are offices within the meaning of the charter, or that the incumbents thereof can be regarded as officers. I can find no ordinance or resolution of the common council creating any such offices, and, in the absence of any such action, the clerks in question must be regarded as occupying contract relations with the city rather than official. They are mere employees, and under the express and implied terms of their employment are subject to discharge at any time by the city; but as they are not officers, the question whether they shall be discharged or not, comes within the veto power of the mayor, the same as any other matter concerning the contracts of the city.

Disapproving, as I do, of any interference with the clerks in the offices named, unless at the request of the officers themselves, and believing that the ordinance to which I have referred is correct in its policy, and that it should be enforced, I deem it my duty to veto each of the said resolutions, and trust that, upon a reconsideration of the same, your honorable body will see the injustice of forcing a clerk upon any city officer, especially those who are required to give official bonds. Very respectfully,                    GEO. C. LANGDON, *Mayor*.

DETROIT, January 24, 1879.'"

Ald. Monaghan moved that the communication be received, and that the resolutions therein referred to be reconsidered.

Ald. Russell moved to lay the whole matter on the table.

Carried.

That on the 28th day of January, 1879, the sureties upon the official bond of Geo. W. Gilbert, city assessor, presented a communication to the common council remonstrating against any change in the clerks in the assessor's office, and asking the council to rescind its action appointing Wm. A. Throop chief clerk, and certain other persons clerks in said office, or to relieve them from further liability as such sureties, and on the 14th day of February, 1879, at a session of the council held on that day, the action of the council of the 24th day of January in appointing William A. Throop chief

clerk in the assessor's office was reconsidered by the council by a vote of thirteen yeas to eleven nays. It was then moved that the resolution making the appointment be adopted, notwithstanding the objection of the mayor. The motion was lost by a vote of eleven yeas to thirteen nays. The motion last aforesaid, as well as the motion to reconsider, included all appointments referred to in the mayor's veto message hereinbefore set forth.

This defendant admits that said William A. Throop has requested the city assessor to admit him into his office as chief clerk therein, and that the city assessor has refused to receive him, and that this defendant is still performing the duties of chief clerk, and claims the right to do so.

That said William A. Throop has no legal appointment by the common council or any other competent authority, and any steps he may have taken to qualify for said office, or to enter upon its duties are null and void; without this, that there was a nomination of the said Throop to the common council by the city assessor, and an approval of the resolution of appointment by the mayor, and of this the said defendant puts himself upon the country."

The replication to the second plea, referred to in the statement of facts, runs thus:

"And the said people as to the plea of said defendant secondly above pleaded, say that they, the said people, by reason of anything by the said defendant in his plea alleged, ought not to be barred from having or maintaining their aforesaid action thereof against him, the said defendant, because the said common council of the city of Detroit, under and by virtue of the authority contained in section 20 of chapter two of the charter of the said city of Detroit, on the 14th day of January, 1879, passed a resolution vacating the office theretofore held by said defendant, by a vote of 14 yeas to 12 nays,

which said vote of 14 yeas was a majority of all the aldermen elect, said resolution being in the words following, to-wit:

"*Resolved,* That each and every one of the persons holding or occupying the following named city offices be and they are hereby removed from office, and that said offices be and they are each and every one of them hereby declared vacant, to wit: gas inspector, clerk of the market, weighmaster of the eastern district, weighmaster of the western district, pound keeper of the eastern district, pound keeper of the western district, wood inspector of the eastern district, wood inspector of the western district, city collector, deputy city collector, or collector's clerk, clerk of the police court, health officer, the members of the board of health at large, janitor city hall, city physicians for each and all the six districts, assistant city clerk, assistant receiver of taxes, or receiver's chief clerk, assistant market clerk, assistant police justice, members of the board of health now filled by Drs. Lichty and Kaiser, book-keeper controller's office, entry clerk controller's office, chief clerk assessor's office, clerkships in assessor's office now filled by George Reed, John J. Plunkett, James Hanmer, Joseph Diedrich and Thomas Nolan; clerkships in treasurer's office now filled by William G. Spranger, clerkships in receiver's office now filled by Joseph O. Bellair, Robert E. Roberts, Jr., Lewis C. Watson, and John J. Perrien; messenger of common council, health officer." And this the said people are ready to verify.

The demurrers and other pleadings not here given set forth grounds that were not material to the decision of the court, and they are omitted from this statement of the case.

*Alfred Russell* for the relator. An office is a right to exercise a public employment and to take the fees or emoluments belonging to it, Bouv. Law Dict., tit. Office: it is any employment in behalf of the government in any station of public trust not merely transient, occasional or accidental, *Jackson v. Healy*, 20 Johns., 495; a clerk of the Secretary of State is an "officer," *Vaughn v. English*, 8 Cal., 39; so is a clerk appointed by the Assistant Treasurer of the United States (*United States v. Hartwell*, 6 Wall., 385), or by the Comptroller of the

Treasury (*Exp. Smith*, 2 Cr. C. C., 693); so is a pilot appointed by a board of commissioners under a statute (*Palmer v. Woodbury*, 14 Cal., 43), or a sail-maker appointed by the Secretary of the Navy, *Sanford v. Boyd*, 2 Cr. C. C., 78; *quo warranto* lies for any office of a public nature that is not merely the function of a deputy or servant held at another's pleasure (*Darley v. The Queen*, 12 Cl. & Fin., 541), and the title to the office cannot be tested collaterally in any suit for the salary, *Auditors v. Benoit*, 20 Mich., 176.

City Attorney *Wm. C. Maybury* and City Counselor *F. A. Baker* for the defendant. All public employments are not offices, *Bunn v. People*, 45 Ill., 397; *Matter of Hathaway*, 71 N. Y., 238; *People v. Ridgley*, 21 Ill., 65; the chief clerk of the assessor of Detroit is merely the assessor's servant, and an information in his behalf in the nature of a *quo warranto* will not lie for the clerkship, *The King v. Corp. of Bedford Level*, 6 East, 356; *The King v. Justices of Herefordshire*, 1 Chitty, 700; *Com. v. Dearborn*, 15 Mass., 125; *State v. Utter*, 14 N. J. Law, 84.

COOLEY, J. If the position of chief clerk in the office of the assessor of the city of Detroit is not an *office* it is conceded that this proceeding cannot be supported. We are all of opinion that it is not.

An office is a special trust or charge created by competent authority. If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual, who for the time will be the officer. The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily,

in the tenure of his position.    In particular cases other distinctions will appear which are not general.

In this case the facts are stipulated, and are given in the margin.*   We find among them no evidence that an office known as chief clerk in the office of the assessor of Detroit has ever been created.   A person has been appointed, and has acted under the designation of chief

* STATEMENT OF FACTS.—1. That the city of Detroit is a municipal corporation, existing under and by virtue of an act entitled "An act to revise the charter of the city of Detroit," approved February 5, 1857, and the acts amendatory thereof.

2. That from 1861 to July 13, 1877, the city assessor was authorized by an ordinance of the common council of said city to employ such clerks to assist him in the business of his office as were necessary, and a true copy of said ordinance, being section seven of an ordinance relative to the city assessor and his assistants, approved Dec. 30, 1861, and amended by an ordinance approved March 22, 1864, is recited and set forth in the second plea of the defendant in this cause.

3. That from the adoption of said ordinance of Dec. 30, 1861, down to July 13, 1877, the clerks in the office of the city assessor were employed by the assessor, without any intervention or interference on the part of the common council, and the said power and authority were so exercised by him by virtue of his office and the ordinance as aforesaid.

4. That on the 13th day of July, 1877, the mayor of said city approved an ordinance duly passed by the common council of said city, entitled "An ordinance relative to the appointment of assistants, clerks and other employees," and a true copy of said ordinance is set forth in the said second plea of the defendant herein.

5. That at the time said ordinance of July 13th, 1877, was adopted, the Hon. H. H. Leroy was city assessor, and there were five or six clerks in his office, who had been employed by him under said ordinance of Dec. 30, 1861, and they remained in his office with him until the expiration of his official term on the 28th day of March, 1878; at which time he was succeeded in office by the Hon. Geo. W. Gilbert, the present city assessor of the city of Detroit.

6. That on the 29th day of March, 1878, the said Geo. W. Gilbert, as city assessor, sent a communication to the common council nominating and recommending Thomas F. Langdon for the position of chief clerk of the assessor's office, and on the 2d day of April, 1878, said nomination was confirmed by the council, and thereupon the said Thomas F. Langdon entered upon the discharge of his duties as such chief clerk, and from thence hitherto has continued to perform said duties.

7. That the common council of said city has never fixed or prescribed the duties of the chief clerk or of the other clerks in the assessor's office, but as a matter of fact the duties of the chief clerk are those of a mere clerkship, and consist of writing out and copying the annual assessment rolls of the city from minutes and field notes furnished by the assessor and his assistants, and also special assessment rolls prepared in the office of the city assessor.

That the chief clerk exercises none of the official functions, powers or authority appertaining to the office of assessor, and he does not act for or represent the assessor in any official act or duty.

That the clerks in the assessor's office are only necessary because

clerk, but no statute or ordinance has given him that title, and if he were now to be called and to style himself in the discharge of his duties head clerk, or leading clerk, or assistant to the assessor, or assessor's amanuensis, it would, for aught we can discover, be equally well, for nothing whatever depends upon the name. Indeed, we can discover no necessity for his making use of the title

the assessor and his assistant assessors provided by the charter cannot do all the writing and copying required in the office.

That the only distinction between the chief clerk and the other clerks in the office is that the chief clerk gives out or divides the work among all the other clerks, and superintends the work for the purpose of makieg the work systematic and efficient, and of having the work properly performed, but the chief clerk cannot sign the name of the assessor or determine any matter within his official judgment or discretion, and in point of fact is merely his chief amanuensis and copyist.

8. That on the 14th day of January, 1879, the common council of said city passed a resolution purporting to remove the defendant and a large number of other clerks, officers and employees, from their respective offices and positions, and a true copy of which resolution is set forth in the replication of the people to the defendant's second plea.

9. That on the 22d day of January, 1879, the common council adopted the following resolution by a vote on the call of the roll of 14 yeas to 11 nays:

"*Resolved,* That William A. Throop be and is hereby appointed chief clerk in the assessor's office."

That on the then next session of the common council the mayor of said city sent to the council the veto message, a true copy of which is set forth in the third plea of the defendant herein, and that such resolution has never been passed over the said veto.

10. That the common council has never taken any other or different proceedings to create the office of chief clerk of the assessor's office than those herein set forth.

11. The statement contained in the third subdivision of this stipulation is modified by the following:

At a session of the common council on the 13th day of January, 1874, Ald. Baxter moved that James C. Oldfield be appointed chief clerk in the assessor's office.

The motion was adopted on a call of the yeas and nays by a majority vote of all the aldermen elect.

At the then next session of the common council the following proceedings took place:

"SUSPENSION OF THE RULES."

"On motion of Ald. Coots, the rules were suspended for the purpose of reconsidering the vote by which the resolution was adopted appointing James C. Oldfield chief clerk in the assessor's office.

"Ald. Coots moved that the vote be reconsidered.

"Ald. Welch moved that the whole matter be laid upon the table until the next session. The motion prevailed."

No further proceedings were had in the council in regard to the matter, and Mr. Oldfield never entered upon the discharge of the duties of chief clerk in the assessor's office.

12. That the chief clerk in the assessor's office is paid by a salary of $1400 per year, and the other clerks a salary of $940 per year.

at all, except perhaps to indicate to those with whom he was transacting business that he was not an intruder in the assessor's office.

Nor do we find in the facts stipulated or in any law or ordinance the requirement of an official oath. It is said that the usual oath of office has sometimes and perhaps always been administered, but why administered we do not understand. The fact of its being taken cannot prove that the clerk is an officer; at most, it could only evidence his belief that he was one, or perhaps his caution to observe all forms that possibly might turn out to be essential. It was, we think, a needless ceremony.

Nor do the duties usually performed by the chief clerk indicate an office rather than an employment. Nothing but custom has defined them, and custom has certainly not been very specific, except in excluding him from all "the official functions, power and authority appertaining to the office of assessor," and from "representing the assessor in any official act or duty." But while thus excluded he is still wholly subordinate to the assessor, having no independent functions; his duties are those of "a mere clerkship, and consist of writing out and copying the annual assessment rolls of the city from minutes and field notes furnished by the assessor and his assistants, and also special assessment rolls," and he is distinguished from the other clerks in the office in that "he gives out and divides the work among the other clerks, and superintends the work for the purpose of making the work systematic and efficient, and of having it properly performed." Surely these cannot be called official functions; they are properly described as those of a mere clerk, and a mere clerk is not an officer.

But the duties, such as they are, can be changed at the will of the superior, since no rule of law or well defined custom forbids it. The assessor may distribute his own work and oversee it himself, and if he were to restrict the clerk, now called the chief clerk, to some

particular class of duties without making others subordinate to him, we cannot see that the incumbent would have any legal ground of complaint. The law has put nobody under the chief clerk, and the title is as applicable to the assessor's confidential assistant, who is "chief" because of the special confidence reposed, as it is to one who is "chief" because of having a certain authority over others. The word "chief," in other words, defines no duties, and the title "clerk" is properly that of an employee. We know of no case in which it is conferred as a title of office where the duties are undefined. Nor is there anything significant in the fact that the chief clerk is independent of the assessor in the tenure of his position. The common council might give the assessor a janitor equally independent in that particular, but the janitor would not be an officer.

As these views require us to render judgment for defendant, it does not become necessary to consider the applicability to the case of the remedy which was sought. But it is proper to say that it is at least doubtful whether the proceeding by information is applicable to the case of any office not created by the State itself. In *People v. DeMill*, 15 Mich., 164, 182, we had occasion to point out that there may be many cases apparently within the words of the statute which cannot be within its real intent and meaning.

Judgment will be entered for the defendant, but without costs.

The other Justices concurred.