# JUNE TERM 1916.*

### JONES *v.* CITY OF BATTLE CREEK.

MUNICIPAL CORPORATIONS—CITIES—PUBLIC OFFICER.

> Where, previous to the adoption of a charter under the new Constitution, a stockkeeper was appointed by the mayor of a city and held office at a weekly salary, and later a new charter was adopted providing that all appointive officers having indefinite tenure should continue in office under the charter until successors were appointed, and where the official took an oath of office and his duties consisted in having charge of the brickyard where tools and implements were located and a key of the brickyard and building therein, he was an employee and did not belong to the class of appointive officers.

Error to Calhoun; Weimer, J., presiding. Submitted June 20, 1916. (Docket No. 92.) Decided September 26, 1916.

Assumpsit by M. J. Jones against the city of Battle Creek for salary as city stockkeeper. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed, and no new trial ordered.

*Howard W. Cavanagh* (*Stevenson, Carpenter, Butzel & Backus,* of counsel), for appellant.

*N. A. Cobb.* for appellee.

On June 19, 1911, the common council of the defendant city passed the following resolution:

"Resolved by the common council of Battle Creek that, in accordance with the recommendation of the mayor, a stockkeeper be appointed to look after the properties at the city shed at a salary of $12 a week."

*Continued from Vol. 192.

On the same date the mayor appointed the plaintiff, M. J. Jones, stockkeeper, and asked the council to confirm the appointment, which was done.

On April 15, 1912, the mayor appointed certain officers and employees to various positions for the ensuing year, and among them the plaintiff. This appointment by its terms expired on April 15, 1913.

On April 10, 1913, a new charter was adopted by the city of Battle Creek, which went into effect on that date, chapter 9, § 1, of which provides in part:

"And provided, that all appointive officers heretofore appointed by the mayor and common council, the board of public works or police commission, whose appointment was made for a definite or indefinite term of office, and whose term of office shall not have expired when this charter shall go into effect, they and each of them may and shall continue in office under this charter until their successors are appointed by the commission, at which time their term of office shall expire."

On the 20th day of April, 1912, plaintiff took an oath of office to the effect that he would support the Constitution of the United States and the State of Michigan, and faithfully discharge the duties of the office of stockkeeper for the city of Battle Creek to the best of his ability.

After the expiration of the year for which plaintiff was appointed he continued to perform the duties of his position until April 21st, upon which date one Shoupe was appointed street commissioner, and at the same time was appointed stockkeeper to act without pay, and his appointment was confirmed by the unanimous vote of the common council.

On the morning of April 22, 1913, plaintiff reported for duty, and found Mr. Shoupe in possession of the office, with the doors unlocked and the desk open. He remarked to Mr. Shoupe, "I guess you got my job,"

left his key on the desk, and departed. From that day until the decision in the case of *North* v. *City of Battle Creek*, 185 Mich. 592 (152 N. W. 194), plaintiff made no demand upon the defendant city for wages, nor did he at any time tender his services to the defendant city.

It is the claim of defendant that plaintiff was not an appointive officer within the meaning of the new charter relied upon, which was successfully invoked in *North* v. *City of Battle Creek, supra.* The defendant asserts that plaintiff was a mere employee. It is further claimed in behalf of defendant that, even if it be held that plaintiff was an officer, within the meaning of the charter provision, he, by his conduct at the time his successor was appointed and assumed the duties of the office, has estopped himself from now claiming pay for work which he neither performed nor offered to perform, and in this behalf it is the further claim of defendant that his conduct amounted to an abandonment of his office.

In the court below a verdict was directed in favor of the plaintiff for the amount of his wages from the date of the appointment of Shoupe to the date of the rendition of the opinion in the *North Case* some two years later; the latter date being adopted by the court with consent of plaintiff's counsel.

BROOKE, J. (*after stating the facts*). The record fails to disclose that under either the new or the old charter of the city of Battle Creek is there any office provided for under the name of "stockkeeper." It will be noticed, too, that the resolution providing for the plaintiff's appointment recites simply that:

"A stockkeeper be appointed to look after the properties at the city shed at a salary of $12.00 a week."

It seems to us that the contention that one, even though appointed by the mayor and common council,

who performs duties such as were performed by the plaintiff in this case, is a public officer, is wholly untenable.

The mayor, defining the duties of plaintiff, in his testimony. said:

"He had some sort of charge of the city yard where the tools, the road scrapers, plows and tools, brick, and all material are located and fenced in and big gates where the teams drove in. I also found that he had a key to that yard and the little building. There was a little building there in which some of the stuff was kept under cover, and that he let the city employees in with material and out taking material and tools out and that he kept the globes for the street lights in that building and that they were delivered to him by the man who took care of the lights."

We have lately (*Blynn* v. *City of Pontiac*, 185 Mich. 35 [151 N. W. 681]) had occasion to inquire with care into the distinction between a public officer and an employee, and the various authorities bearing upon the question will be found there·collected. For the purpose of determining the issue in this case it is unnecessary to go further than to cite the case of *Throop* v. *Langdon*, 40 Mich. 673. There Justice COOLEY said:

"In this case the facts are stipulated, and are given in the margin. We find among them no evidence that an office known as chief clerk in the office of the assessor of Detroit has ever been created. A person has been appointed and has acted under the designation of chief clerk, but no statute or ordinance has given him that title, and if he were now to be called and to style himself in the discharge of his duties head clerk, or leading clerk, or assistant to the assessor, or assessor's amanuensis, it would, for aught we can discover, be equally well; for nothing whatever depends upon the name. Indeed, we can discover no necessity for his making use of the title at all, except perhaps to indicate to those with whom he was transacting business that he was not an intruder in the assessor's office. Nor do we find in the facts stipulated or in any law

or ordinance the requirement of an official oath. It is said that the usual oath of office has sometimes and perhaps always been administered, but why administered we do not understand. The fact of its being taken cannot prove that the clerk is an officer; at most, it could only evidence his belief that he was one, or perhaps his caution to observe all forms that possibly might turn out to be essential. It was, we think, a needless ceremony.

"Nor do the duties usually performed by the chief clerk indicate an office rather than an employment. Nothing but custom has defined them, and custom has certainly not been very specific, except in excluding him from all 'the official functions, power, and authority appertaining to the office of assessor,' and from 'representing the assessor in any official act or duty.' * * * Nor is there anything significant in the fact that the chief clerk is independent of the assessor in the tenure of his position. The common council might give the assessor a janitor equally independent in that particular, but the janitor would not be an officer."

See, also, *U. S.* v. *Maurice,* 26 Fed. Cas. p. 1211, where Chief Justice MARSHALL said:

"Although an office is 'an employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer."

And see *City of Ellsworth* v. *Rossiter,* 46 Kan. 237 (26 Pac. 674).

Judgment is reversed, and there will be no new trial.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.