ULRICH, ETC. *v.* BEATTY, ETC., ET AL.

[No. 20,509. Filed May 23, 1966. Rehearing denied June 28, 1966.]

*Kurt F. Pantzer, Jr.,* and *David B. Caldwell,* of Indianapolis, for plaintiff-relator.

*John J. Dillon,* Attorney General, *Charles S. White,* Chief Counsel, and *Virginia Dill McCarty,* Deputy Attorney General, for defendants-respondents.

*Robert G. Mann,* of Indianapolis, for defendants-respondent, H. Dale Brown.

## THE FACTS

FAULCONER, J.—The 1965 General Assembly of the State of Indiana, in its Second Special Session, duly passed an Act entitled, "AN ACT concerning the jurisdiction of courts to issue restraining orders, injunctions and mandamuses against public officials.", which Act was duly enacted into law by the Governor of the State of Indiana.[1]

On the 30th day of December, 1965, James E. Ulrich, as Republican Member, Marion County Board of Registration, filed an action entitled, "Complaint for Restraining Order, Injunction Pendente Lite and Declaratory Judgment" in the Superior Court of Marion County, Room No. 1, in Cause No. S165-803. In the prayer of the complaint plaintiff-Ulrich requested the court to declare whether or not he will be subject to prosecution under Acts 1945, ch. 208, § 376, § 29-5711, Burns' Ann. Ind. Stat., (commonly known as the Corrupt Practices Provisions of the Indiana Election Code) if he complies with the provisions of ch. 261, § 9, of the Acts of 1965 § 29-3406, Burns' Ann. Ind. Stat., (which section amended the 1945 election code to authorize "door to door" registration of voters in counties with a population in excess of 80,000, and providing compensation for deputy registration officers for their services in obtaining said registrations). Plaintiff-Ulrich further requested a restraining order and in-

---

1. Acts 1965 (2nd Spec. Sess.), ch. 7, is set forth in its entirety as Appendix "A" to this opinion.

junction *pendente lite* against the defendants "James Beatty and H. Dale Brown, those they represent and their respect [respective] precinct committeemen, vice committeemen and deputy registration officers" from performing any act pursuant to Acts 1965, ch. 261, § 9, *supra*, which would cause the plaintiff to certify that any such precinct committeemen or vice-committeemen or deputy registration officers are entitled to payment of a ten-cent voters' registration or transfer fee by all counties having a population of 80,000 or more.

On December 30, 1965, the Honorable Charles C. Daugherty, Judge of the Superior Court of Marion County, Room No. 1, issued a "Temporary Restraining Order" in said cause.[2]

Pursuant to Acts 1965 (2nd Spec. Sess.), ch. 7, the Attorney General of Indiana filed in this court, on January 5, 1966, his "Verified Petition for Removal of Cause [S165-803] to the Appellate Court of Indiana" requesting this court to fix a date and hour not less than three days, nor more than seven days, after the date of removal on which oral arguments will be heard on the question of whether the temporary restraining order issued by the Judge of the Superior Court of Marion County, Room No. 1, in Cause No. S165-803 shall be continued in effect as required by Acts 1965 (2nd Spec. Sess.), ch. 7, *supra*.

Pursuant to such Act this court, on January 6, 1966, set January 11, 1966, at 10:30 A.M., for the hearing of oral arguments. Such oral arguments were had on January 11, 1966, before this court, in banc, after which, on said date, this court made the following entry in this cause:

"The Appellate Court heard and considered argument. Judges voted to take no action. Mote, J., dissents."

Thus, pursuant to the "Removal Act," being Acts 1965 (2nd Spec. Sess.), ch. 7, *supra*, the temporary restraining order was dissolved by operation of law.

---

2. The pertinent part of the "Temporary Restraining Order" issued by the Judge of the Superior Court of Marion County, Room No. 1, is set forth as Appendix "B" to this opinion.

On January 14, 1966, the Attorney General of Indiana filed his duly verified petition stating that the Honorable Charles C. Daugherty, Judge of the Superior Court of Marion County, Room No. 1, was proceeding with the hearing in Cause No. S165-803. On said date this court issued an order restraining said Judge from proceeding further in said cause, and ordering him to show cause, if any, on or before January 26, 1966, why said restraining order should not be made absolute.

## THE ISSUES.

Without burdening this opinion by setting forth in detail the further proceedings and filings by the respective parties, we believe it sufficient to say that the various petitions, motions and briefs filed herein, and the oral arguments, raise issues for our determination which fall within two main categories.

### I.

The jurisdiction of this court to entertain and decide this matter.

### II.

If *I.* is answered affirmatively, is the "Removal Act," being Acts 1965 (2nd Spec. Sess.), ch. 7, *supra,* constitutional?

### I.

James E. Ulrich, plaintiff-relator, and respondents[3] advance several reasons why this court has no jurisdiction to decide this cause and, therefore, urge this court to remand the cause to the Superior Court of Marion County, Room No. 1, or transfer this cause to the Supreme Court of Indiana, which reasons are as follows:

1. For failure of the Attorney General to give notice to respondents of the Attorney General's request to the Appellate

---

3. Hereinafter James E. Ulrich, plaintiff-relator, the Superior Court of Marion County, Room No. 1, and the Honorable Charles C. Daugherty, Judge thereof, shall be referred to as "respondents."

Court of Indiana for a restraining order against respondents at least 24-hours prior to making the request, as required by Rule 2-35, Rules of the Supreme Court, 1964 Revision.

The 24-hour requirement is provided for, not in the rule itself but within what is titled, "Note to Counsel Presenting Original Writs," which follows the statement of the rule. The procedural requirements set forth in this "Note to Counsel" requests the "cooperation of the attorneys in the use of the following procedure in presenting such matters."

Even if this procedure can be considered of the same force and effect as the rule itself, we are of the opinion that the record discloses sufficient evidence of notice that the Attorney General intended to so act. This, connected with the emergency nature involved and the reasonable assumption that respondents did, indeed, anticipate some action would be taken to prohibit further action by the Judge of the Superior Court, Room No. 1, convinces us that they were not taken by complete surprise nor were their rights infringed upon, nor can we, under the circumstances, agree with their charge of unfairness.

2. Next, respondents contend that the writ of prohibition issued by this court, on the petition of the Attorney General, against the Judge of the Superior Court of Marion County, Room No. 1, was improper for the reasons that the petition of the Attorney General for the writ, and the writ of prohibition issued thereon by this court, used the same caption as the original action filed in the Superior Court of Marion County, Room No. 1. They contend that the petition and writ of prohibition being ancillary must be an *ex rel* proceeding; that the parties respondent in said petition and writ should have been the Superior Court of Marion County, Room No. 1, and the Judge thereof, and the real party in interest being James W. Beatty, the petition should have been brought and the writ issued on his behalf and not by and in the name of the Attorney General only.

We feel respondents confuse an original action for a writ of prohibition with a writ issuing from the Appellate Court in an action which is already in the Appellate Court.

In the present cause the original petition for declaratory judgment and temporary restraining order filed in the Superior Court of Marion County, Room No. 1, and the temporary restraining order issued by the Judge thereof, were removed to this court pursuant to Chapter 7, Acts 1965 (2nd Spec. Sess.), *supra*. By virtue of said Act this court assumed jurisdiction of the cause and, therefore, the Superior Court of Marion County, Room No. 1, and the Judge thereof, had no further jurisdiction. Our action in issuing the writ of prohibition against the Judge of the Superior Court of Marion County, Room No. 1, was taken by this court in aid of its jurisdiction.

Section 10 of the "Removal Act" gives to the Appellate Court of Indiana the authority to issue all writs and orders necessary to effectuate its jurisdiction under this Act.

3. There is no restraining order against any "public official" as required in the "Removal Act" itself.

Relator argues that James Beatty and H. Dale Brown, political party chairmen, are not "public officials"; that precinct committeemen and vice-committeemen are not "public officials"; and that deputy registration officers are not "public officials." Relator's sole authority for these conclusions is the following quotation from *Featherngill* v. *State, ex rel.* (1904), 33 Ind. App. 683, at pages 686-687, 72 N. E. 181:

> "In order to entitle himself to office, it was necessary for him to qualify as required by the statute. *Minnick* v. *State* [1900], 154 Ind. 379; *Steinback* v. *State, ex rel.* [1872], 38 Ind. 483, 488. It was not alleged that he had done so, and facts are not stated from which the deduction can be made."

In construing a statute or words used therein we must give to such statute or such words that meaning which will carry

out the general purposes and intent of the General Assembly, if it can reasonably be done. Our election statutes provide for, and extensively regulate, the elections of committeemen, the appointment of vice-committeemen, and the election of county chairman of political parties. We agree that this alone does not *ipso facto* make these persons "public officials" in all situations.

Acts 1965, ch. 261, § 9, p. 683, § 29-3406, Burns' 1965 Cum. Supp., which was the subject of the injunction requested of, and issued by, the Judge of the Superior Court of Marion County, Room No. 1, provides, in part, as follows:

> "The precinct committeemen and the precinct vice-committeemen of the two [2] political parties which cast the highest vote for secretary of state in their respective counties at the last preceding general election shall be ex officio deputy registration officers of the county. The chairman of such two [2] political parties shall file with the clerk or board of registration a list of the names, addresses and precinct numbers of such precinct committeemen and vice-committeemen, who shall take an oath to faithfully discharge their duties as such deputy registration officers. In addition to such ex officio deputy registration officers, the clerk or registration board of the county shall appoint forthwith upon the written recommendation of each such county chairman additional deputy registration officers not exceeding two [2] for each party from each precinct."

In addition to providing for deputy registration officers, said 1965 amendatory fixes their term, their pay, provides for their taking an oath, and authorizes them to take acknowledgments and act for the Board of Registration. We feel that deputy registration officers meet the definition of public officers as laid down in *Book* v. *State Office Bldg. Comm. et al.* (1958), 238 Ind. 120, 153, 149 N. E. 2d 273.

The obvious purpose of Acts 1965 (2nd Spec. Sess.), ch. 7, *supra* (the removal statute) is to obtain an orderly and uniform enforcement and effectiveness of the statutes of State-wide public interest and concern. To achieve this end this Act was intended to apply to every official

act to be performed under a statute and, therefore, the words "public official" as used therein, in our opinion, must be construed to include any person who has an official act to perform thereunder. In addition, if we were to give the words "public official" the narrow meaning urged upon us by respondents, the purposes of the "Removal Act" could be frustrated or completely defeated. The act of prohibiting political county chairmen from making recommendations for the appointment of deputy registration officers certainly is just as effective as the act of prohibiting the Clerks of Circuit Courts or Boards of Registration from appointing deputy registration officers. We consider this argument a distinction without a difference. Such was not, in our opinion, the intention of the General Assembly.

4. Respondents contend that since Acts 1965 (2nd Spec. Sess.), ch. 7, *supra* (commonly known and cited as the "Removal Statute"), designates the Appellate Court of Indiana as the court of original jurisdiction and, therefore, there being no "inferior tribunal" no writ of mandate can issue pursuant to the provisions of Acts 1911, ch. 223, § 2, p. 541, § 3-2202, Burns' 1946 Replacement.

This argument, in our opinion, is tantamount to saying that the General Assembly can give this court jurisdiction in cases removed to it under the Act, but this court has no authority to compel the Superior or Circuit Courts to remove the cause, nor to prohibit those courts from further action therein. This certainly contravenes all logic and the well-established, inherent and statutory right of this court to do so "in aid of its jurisdiction."

"While the Appellate Court is primarily a court of appeals, it is a creature of the Legislature, and it was well within the power of the General Assembly to give it original jurisdiction to review the proceedings of the Industrial Board." *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 106, 26 N. E. 2d 399.

"It is equally true that the legislature may confer upon a court of its own creation either appellate or original juris-

diction or both." *Chicago, etc., R. Co. v. Railroad Com., etc.* (1906), 38 Ind. App. 439, 457, 78 N. E. 338.

"The policy of the framers of our Constitution seems to have been not to prescribe absolutely the boundaries or limits of the jurisdiction of our courts, but to allow a legislative discretion in that respect in order that the varying demands and changing necessities of the people might be satisfied." *Lake Erie, etc., R. Co. v. Watkins* (1902), 157 Ind. 600, 607, 62 N. E. 443; *In re Petitions to Transfer Appeals* (1931), 202 Ind. 365, 385-386, 174 N. E. 812.

5. Respondents have questioned the jurisdiction of this court to pass on the constitutionality of the "Removal Act" (Acts 1965 (2nd Spec. Sess.), ch. 7, *supra*), and entered their special appearance on January 25, 1966, to contest jurisdiction, in which they requested this court to dismiss this cause for lack of jurisdiction and to transfer the cause to the Supreme Court. In connection with such special appearance respondents allege that "this court has no jurisdiction with respect to constitutional questions. . . ." However, on March 18, 1966, respondents filed their brief alleging that, on reflection, "it would appear that this court has jurisdiction to determine its jurisdiction and in so doing pass on the constitutionality of the Removal Act."

Since jurisdiction of the subject-matter cannot be waived, it is our duty to determine whether jurisdiction, in fact, exists. *Wilson v. Estate of W. L. Kings* (1961), 131 Ind. App. 412, 415, 170 N. E. 2d 63; *Catherwood v. McIntyre* (1934), 99 Ind. App. 220, 221, 192 N. E. 109.

An unconstitutional Act is a nullity and cannot confer or take away rights. Yet such an Act has the semblance of a valid law until it is declared unconstitutional by the courts and until that is done all parties may in good faith act under or in pursuance of such statute. *City of Indianapolis v. Dillon* (1937), 212 Ind. 172, 180, 6 N. E. 2d 966.

Courts have the inherent power to do all that is necessary to carry out their purpose of administering justice. In this

cause we are called upon to construe the Constitution of Indiana as a necessary adjunct to judicial administration of justice. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 498, 29 N. E. 2d 405, 130 A. L. R. 1427.

In *In re Talbot* (1915), 58 Ind. App. 426, 108 N. E. 240, John W. Talbot filed a petition in the Appellate Court addressed " 'to any Judge of the Appellate Court of the State of Indiana' " seeking restoration of his rights as an attorney at law. The petition was based upon an Act approved March 7, 1913 (Acts 1913, p. 318). This Act provided, in substance, that any attorney, five years after a judgment of disbarment, could apply to any judge of the Supreme or Appellate Court of this State for restoration of his rights as an attorney at law.

The Appellate Court, prior to determining the Act invalid, at pages 428-429 of 58 Ind. App., stated:

"It is insisted by the objectors that the act in question is unconstitutional, and in this connection it has been suggested that the presentation of such question necessitates a transfer of the case to the Supreme Court under §§ 1391, 1392 Burns 1914, Acts 1901, p. 565, Acts 1907, p. 237. This provision of the statute applies solely to cases which come to this court on appeal and has no application to cases which come to the court, or any of its judges, as a court of original jurisdiction. If any jurisdiction is conferred on the respective judges of this court by the act in question, it is original and not appellate, and hence such jurisdiction is not controlled by §§ 1391, 1392 Burns 1914, *supra.*"

The Supreme Court in *State ex rel. Standard Oil Co.* v. *Review Bd.* (1951), 230 Ind. 1, 101 N. E. 2d 60, recognized the authority of the Appellate Court to determine the constitutionality of a statute in cases in which we have "exclusive original jurisdiction." In that case § 1507 (a) of the Indiana Unemployment Security Act (§ 52-1539f, Burns' 1951 Repl.) was attacked as contravening Article 3, § 1, and Article 4, § 1 of the Constitution of Indiana. The

Supreme Court held that even though the statute, § 52-1542k, Burns' 1951 Replacement, provides that a decision of the Review Board may be "appealed" to the Appellate Court for errors at law, it is not an appeal, and that "[i]t is a judicial review by the Appellate Court, which is the court of exclusive original jurisdiction.", citing *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Peabody Coal Co.* v. *Lambermont* (1942), 220 Ind. 525, 44 N. E. 2d 827; *Burroughs Adding Machine Company* v. *Dehn* (1942), 219 Ind. 350, 38 N. E. 2d 569. Further, at page 13 of 230 Ind., page 65 of 101 N. E. 2d, the court said:

> "The provision of the statute which requires that appeals, in which the constitutionality of a statute is presented, shall be taken directly to the Supreme Court has no application to cases which go to the Appellate Court as a court of original jurisdiction. *In re Talbot* (1915), 58 Ind. App. 426, 108 N. E. 240."

We are, therefore, of the opinion that we have jurisdiction to determine the constitutionality of the "Removal Act," being Acts 1965 (2nd Spec. Sess.), ch. 7, *supra.*

## II.

Having established above that we have jurisdiction to decide whether or not the "Removal Act" is constitutional, we now turn our attention to the main and most important issue.

Here, again, respondents and plaintiff-Ulrich advance several grounds to establish that this statute is unconstitutional and urge us to so declare.

1. Respondents and plaintiff-Ulrich in their briefs first argue that the "Removal Act," in giving to the Attorney General the sole power to remove a cause pending in a Superior or Circuit Court to the Appellate Court of Indiana, violates Article 1, § 12, Article 4, §§ 22(3), 22(4), and Article 4, § 23 of the Constitution of Indiana, and the Fourteenth Amendment to the Constitution of the United States.

Article 1, § 12, of the Constitution of Indiana provides as follows:

> "All courts shall be open; and every man, for injury done to him in his person, property or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

Respondents cite no authority in their briefs for their allegation that this Act violates this section of our Constitution.

The Act in question merely places certain actions for mandate and prohibition into the Appellate Court of Indiana which is given sole and original jurisdiction thereof. The Legislature, in order to accomplish their purpose of having a court with State-wide jurisdiction determine whether the operation of an Act of the General Assembly should be enjoined, has given to the Attorney General, a State official who is also required to defend the Acts enacted by the General Assembly, the duty of removing certain causes filed in the Superior or Circuit Courts that involve State-wide interest and concern. This does not prevent parties in causes not qualifying under the "Removal Act" from their remedy at law. They still have the same rights to trial and appeal under the general statutes that have always existed in such matters. Therefore, we find no violation of Article 1, § 12, of the Constitution of Indiana, *supra*.

Article 4, § 22(3) and § 22(4), of the Constitution of Indiana, *supra*, which respondents argue are violated by the Act, read as follows:

> "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:
>
> \* \* \* \* \*
>
> "[3.] Regulating the practice in courts of justice;
>
> "[4.] Providing for changing the venue in civil and criminal cases;
>
> \* \* \* \* \*."

Article 4, § 23, *supra,* provides that all laws shall be general and of uniform operation throughout the State.

Respondents, in their brief, first argue a violation of Article 4, § 22(3), *supra.* Their brief, in this regard, consists of quotes from § 3 of the "Removal Act," from Article 4, § 22(3), of the Constitution of Indiana, *supra,* and a quotation from the case of *Employers', etc., Assurance Co.* v. *Indianapolis Trac. Co.* (1924), 195 Ind. 91, 144 N. E. 615. No attempt is made to apply said case to the cause at issue here as required by Rule 2-17(e), Rules of the Supreme Court, 1964 Revision. We have only the benefit of respondents' conclusion that since the Attorney General is permitted to "pick and choose" which actions are to be removed, Article 4, § 22(3), of the Constitution of Indiana, *supra,* is violated. Likewise, respondents quote only a statement of general law from *Perry Civil Twp.* v. *Indianapolis Power & Light Co.* (1943), 222 Ind. 84, 51 N. E. 2d 371, in support of their assertion that the "Removal Act" violates Article 4, § 23, of the Constitution of Indiana, *supra.*

Generally §§ 22 and 23 of Article 4 of the Constitution of Indiana, *supra,* prohibit the Legislature from passing "local or special laws" in certain enumerated cases and require laws to be "general, and of uniform operation throughout the State."

"A special law is one which relates to particular persons or things or to particular persons or things of a class, or which operates on or over a portion of a class instead of all of the class, and a local law is one which operates over a particular locality instead of over the whole territory of the State." 26 Ind. Law Encyc., Statutes, § 24, p. 243.

There can be no serious assertion that this Act is a "local law." Cases within its terms can be removed from any part of the State if the other requirements are met.

"A law is not local or special if it applies to all who come within its provisions generally and without exception, applies generally to a particular class of cases, rests on an

inherent and substantial basis of classification, and its operation is the same in all parts of the State under the same circumstances." 26 Ind. Law Encyc., Statutes, § 24, pp. 243-244, *supra.*

The Legislature, by the "Removal Act" gives to the Attorney General the right to remove to the Appellate Court those cases in which an injunction or restraining order has been issued against the implementation of a statute of the State of Indiana when it involves a question of State-wide public interest and concern. This, in our opinion, is not an unreasonable classification. Its operation is general throughout the State and affects alike all cases within the classification.

"The fact that a statute exempts from its operation certain classes does not render it local or special, as long as the classification is not unreasonable or arbitrary." 26 Ind. Law Encyc., Statutes, § 24, p. 244, *supra.*

In Section 1 of the Act legislative recognition of a situation involving laws of State-wide application was proclaimed. The Act found that "the uniform and orderly enforcement and effectiveness of Acts of the General Assembly are of state-wide public interest and concern . . ." and that it is "in the best interests of the State of Indiana and its citizens that original jurisdiction to restrain and enjoin any public official from doing any act authorized by any Act of the General Assembly . . . shall reside in judges and courts whose jurisdiction is state-wide . . ."

In determining whether classification is reasonable, or special, and thus violative of the Constitution of Indiana, every reasonable presumption must be indulged in favor of constitutionality. A court will look behind the thing legislated and decide the issue on whether the purpose is reasonable and whether all members within the class are treated alike. *Tinder, Pros. Atty., et al.* v. *Music Op. Inc.* (1957), 237 Ind. 33, 42, 142 N. E. 2d 610.

Legislation is not special if there remains some relationship between the classification and the objective of the law which the Legislature could have considered to exist. *Evansville-Vanderburgh, etc., et al.* v. *Kamp, etc.* (1960), 240 Ind. 659, 663, 168 N. E. 2d 208.

In our opinion the Act does not allow the Attorney General to "pick and choose" which cases are to be removed to the Appellate Court of Indiana. He is given the responsibility of selecting the forum. His obligations are, at most, procedural.

The fact that the Attorney General is given the responsibility of selecting the forum required by statute does not alone, in our opinion, control the question of whether the Act is "special or local" under these sections of the Constitution.

We have found no case, and none has been cited to us, that establishes otherwise.

Nor have respondents extended convincing argument that said Act violates the Fourteenth Amendment to the Constitution of the United States. Their quotation from one case concerning equal protection of law is general and its application is left entirely to this court. We feel it sufficient to state that no one, by the Act, is denied his day in court nor an appeal to the Supreme Court of Indiana. We are unaware of any law prohibiting the Legislature from changing the jurisdiction of classes of cases from one court to another. This is its perogative and, with few exceptions, it can do so within the existing courts, or even create new courts. As long as the classification is reasonable and others in like circumstances (here "of state-wide interest") are not discriminated against and none are denied access to the courts, the provisions of the Constitution of Indiana and the Constitution of the United States are not violated.

2. Respondents next contend that the "Removal Act" in providing that "unless at least five (5) judges who hear such oral arguments sign an order on the day of such argu-

ment continuing the restraint or mandate in effect as originally issued or as modified by a new order, all restraint or mandate shall thereupon stand dissolved by operation of law," violates Article 3, § 1, of the Constitution of Indiana, *supra*. That § 7, *supra*, is an express interference by the General Assembly with the judicial branch of government.

We need not unduly lengthen this opinion in considering that part of respondents' attack on said "Removal Act" concerning the requirement that at least five judges must sign the order to continue the restraint or mandate in effect.

The Legislature in enacting a law creating the Appellate Court of Indiana, and in amendments thereto, provided that the judges shall sit in two divisions for the hearing and decision of causes,[4] and how the cases shall be distributed.[5] The provision that the judges sit in divisions has been held to be mandatory by our Supreme Court. *Biel, Inc.* v. *Kirsch* (1958), 238 Ind. 372, 150 N. E. 2d 896; *Nash* v. *Hacker et al.* (1958), 238 Ind. 437, 151 N. E. 2d 299. The statute[6] also provides "that the court, in the discretion of the majority of the judges thereof, may sit in banc for the consideration and decision of any cause at which hearing five [5] judges shall constitute a quorum."

As to the contention that to continue the restraining order or mandate in effect, the order must be signed by this court on the same day as the hearing is violative of Article 3, § 1, of the Constitution of Indiana, *supra*, respondents rely upon the case of *State ex rel. Kostas* v. *Johnson* (1946), 224 Ind. 540, 69 N. E. 2d 592, 168 A. L. R. 1118. In that case a statute providing that the judge lost jurisdiction of a cause when he failed to rule within sixty days after taking such matter under advisement was held unconstitutional as an invasion by the Legislature of the judiciary. We believe the present statute is distinguishable from that in the *Kostas* case.

---

4. Acts 1925, ch. 85, § 1, p. 247, § 4-202, Burns' 1946 Replacement.
5. Acts 1901, ch. 247, § 12, p. 565, § 4-207, Burns' 1946 Replacement; Acts 1911, ch. 117, § 3, p. 201, § 4-208, Burns' 1946 Replacement.
6. See footnote 4.

The statute here under consideration does not attempt to terminate jurisdiction over the cause but merely provides for the termination of any restraint or mandate issued unless the Appellate Court issues a new writ or order.

This court retains jurisdiction and can issue writs of prohibition or mandate at any subsequent time if it determines the circumstances warrant such action.

We must presume that the Act is constitutional and if it reasonably can be done, uphold its constitutionality. We must interpret the statute in light of these general principles of construction.

Our Supreme Court in *Fairchild, Prosecuting Atty., etc.* v. *Schanke, et al.* (1953), 232 Ind. 480, at page 483, 113 N. E. 2d 159, said:

> "We recognize the well established principal that it is the duty of this court to sustain the constitutionality of an act of the legislature if it can be done by a reasonable construction. Any doubt concerning the constitutionality of an act must be resolved in favor of its validity." (Citing authorities.)

We must also consider this Act as a whole and in light of the express purposes of the Legislature. It is clear that the purpose of this Act and the intent of the Legislature was to prevent Acts passed by the Legislature which are of "State-wide public interest and concern," from becoming ineffective by the issuance of a restraining order without notice or hearing by a court sitting within one county or circuit of the State. Whether such an Act should become effective or not should be decided by a court of State-wide jurisdiction composed of judges from all sections of the State.

Having created the Appellate Court of Indiana the Legislature can limit or increase its jurisdiction, except giving it final jurisdiction in appeals. It can give the Appellate Court original jurisdiction. *Chicago, etc. R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439, 457, 78 N. E. 338, *supra.*

By this provision of the Act the Legislature has provided for automatic termination of any restraining order issued by a Superior or Circuit Court, without notice or hearing, in any cause which has been removed to this court by virtue of said Act, if this court fails to confirm said restraining order. We find nothing in this provision harmful to any interested party as both have the same opportunity in this court for presenting their arguments concerning the issue of injunctive relief. Respondents have failed to convince us that this provision interferes with the conduct of the business of this court and is, therefore, violative of Article 3, § 1, of the Constitution of Indiana, *supra.*

We must presume that the Legislature in passing an Act is aware of the provisions of the Constitution and does not intend to violate its prohibitions. If such an Act were to attempt to regulate the business of this court in administering justice, such Act, to that extent, would, of course, not be binding upon this court. *The State* v. *Newton* (1877), 59 Ind. 173, 177.

Lastly, respondents argue that § 7, *supra,* of the "Removal Act" violates Article 3, § 1, of the Constitution of Indiana, *supra.* Their first contention that the provision for automatic dissolution of any restraining order violates Article 3, § 1, *supra,* has been considered above.

The second and main ground of attack on the constitutionality of this statute urged by respondents, as we understand it, is to that provision allowing the Attorney General to remove certain causes to the Appellate Court of Indiana "whenever he deems it necessary or desirable for the purposes of the uniform and orderly enforcement and effectiveness of Acts of the General Assembly of state-wide public interest and concern that the case be determined by a court with state-wide jurisdiction."

If this provision gives to the Attorney General judicial power, it violates Article 3, § 1, of the Constitution of Indiana, *supra,* which provides that:

"The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

"Although administrative bodies are not courts, they may be vested with quasi-judicial powers and may perform functions of a quasi-judicial character." 1 Ind. Law Encyc., Administrative Law and Procedure, § 4, p. 154.

"It is equally well settled that statutes conferring upon a ministerial officer or board power to issue and to revoke licenses are not invalid and do not clothe such tribunals with judicial power, and in granting, refusing or revoking any such license such tribunal does not exercise judicial power in violation of constitutional provisions." *Stone* v. *Fritts* (1907), 169 Ind. 361, 366, 82 N. E. 792, 15 L. R. A. (N. S.) 1147.

"[W]hen the Legislature defines its policy and prescribes a standard as it has in the act in question, it may leave to executive boards and officers the determination of facts in order to apply the law, and in connection therewith the right of such administrative boards to make reasonable rules and regulations has been recognized by innumerable decisions of this court." (Citing authorities.) *Financial Aid Corporation* v. *Wallace* (1939), 216 Ind. 114, 119, 23 N. E. 2d 472, 125 A. L. R. 736.

By the Act here under consideration the Legislature has prescribed the causes for injunction it feels should be tried and determined by the Appellate Court. It gives to the Attorney General only the responsibility of determining if a particular cause falls within that classification. The Attorney General is merely selecting the forum in which the cause is to be determined, not the determination itself. He has the duty of discovering facts in determining whether or not a certain cause comes within the class provided in the Act.

"[T]he legislature, while acting within the scope of the powers conferred on it, may vest executive and administrative officers, boards, or commissions with powers of a quasi-judicial nature involving the exercise of a large measure of

judgment and discretion as an incident to the administration of the law and a discharge by them of their administrative functions, . . ." 16 C. J. S., Constitutional Law, § 173, p. 868.

Our Supreme Court, in. many instances, has held duties given administrative officers and boards to be administrative functions and not judicial functions.

In regard to. the Public Service Commission, the Supreme Court in *Winfield* v. *Public Service Commission* (1911), 187 Ind. 53, at page 69, 118 N. E. 531, stated:

"Such commissions use methods like those of a judicial tribunal to elicit facts and make orders, without invading the province of the judiciary. This right and opportunity tends to regularity of proceeding and uniformity of treatment."

We have found no case in Indiana and none has been advanced by the parties wherein the particular fact situation here involved appears.

The Supreme Court of Oregon in *Multnomah County* v. *Luihn* (1947), 180 Ore. 528, 178 P. 2d 159, at page 165, stated:

"Having made a law, the legislature may delegate to some administrative body the power to determine the existence of a state of facts upon which the operation of the law depends. [Citing authorities.] The determination of the existence of such a state of facts is an administrative and not a legislative function." See also: *Dunham* v. *Ottinger* (1926), 243 N. Y. 423, 154 N. E. 298.

The Act in this respect has clothed the Attorney General with administrative duties only, which does not bring it in conflict with Article 3, § 1, of the Constitution of Indiana, *supra*. We, of course, are not here to determine the wisdom of the Legislature in passing this law, or whether a different law would better serve the situation, which task respondents assume frequently in their brief.

Our only duty is to determine the constitutional aspect of this particular Act.

Due to the obvious public importance of this Act, its ramifications, and its effect upon other statutes of great public concern, and the apparent necessity of an early determination of its validity, we have very carefully considered each attack made by respondents upon such Act even where the attack consists only of an allegation, unsupported by authority or unapplied, that it violated a certain part of our Constitution. In our opinion, to avoid a determination on technical grounds would serve no good purpose where we can understand the issue presented.

In the case here under consideration we have been confronted with the difficult problem of separating a preliminary issue which we are called upon to resolve from the main issue to be determined in subsequent procedings. The petition filed in the Superior Court of Marion County, Room No. 1, by James E. Ulrich asks for a declaratory judgment on whether ch. 261, § 9, of the Acts of 1965, *supra,* providing for "door to door" registration of voters in counties with a population in excess of 80,000 would cause Ulrich, in his capacity as Republican Member of the Marion County Board of Registration, to violate the "Corrupt Practices" provisions of the Election Code. By virtue of the decision which we have reached in this opinion, the request for declaratory judgment and a temporary restraining order is now pending in this court and must be heard and determined by this court in future proceedings. The preliminary issue was raised by the petition of the Attorney General to remove said cause to this court pursuant to ch. 7, of the Acts of 1965 (2nd Spec. Sess.), *supra,* and respondents' petition to remand said cause to the Superior Court of Marion County, Room No. 1, on the grounds set out above in this opinion, and respondents' request to transfer said cause to the Supreme Court of Indiana.

## CONCLUSIONS

Therefore, having determined that this cause is properly before this court and that this court has jurisdiction to determine the issues raised in said cause, the petition to remand said cause and the request to transfer said cause to the Supreme Court are each denied.

This court having further determined that ch. 7 of the Acts of 1965 (2nd Spec. Sess.), *supra*, is constitutional, the order heretofore issued by this court on January 14, 1966, to the Superior Court of Marion County, Room No. 1, and the Honorable Charles C. Daugherty, as Judge thereof, restraining said court, and the Judge thereof, from proceeding further in Cause No. S165-803 is made permanent.

Smith, C. J., Wickens, P. J., Bierly, J., and Prime, J., concur. Carson, J., dissents with opinion. Mote, J., dissents with opinion. Hunter, J., dissents with opinion to follow.

## APPENDIX "A."

### Chapter 7.

[S. 475. Approved October 29, 1965 (2nd Spec. Sess.).]

AN ACT concerning the jurisdiction of courts to issue restraining orders, injunctions and mandamuses against public officials.

*Be it enacted by the General Assembly of the State of Indiana:*

SECTION 1. It is hereby found that the uniform and orderly enforcement and effectiveness of Acts of the General Assembly are of state-wide public interest and concern commensurate with the right of persons to seek judicial injunctive or mandatory relief against the effectiveness of void statutes which infringe their civil and property rights. It is also found to be in the best interests of the State of Indiana and its citizens that original jurisdiction to restrain or enjoin any public official from doing any act authorized by any Act of the General Assembly and jurisdiction to mandate any public official to do any act prohibited by any Act of the General Assembly should reside in judges and

courts whose jurisdiction is state-wide when necessary for the uniform and orderly enforcement and effectiveness of Acts of the General Assembly of state-wide public interest and concern.

It is hereby declared to be one of the purposes of this Act to authorize the Attorney General to exercise on behalf of the State its right to invoke the original jurisdiction of a court of state-wide jurisdiction to obtain uniform and orderly enforcement and effectiveness of Acts of the General Assembly of state-wide public interest and concern.

SEC. 2. Original jurisdiction to restrain or enjoin any public official from doing any act authorized by any Act of the General Assembly and to mandate any public official to do any act prohibited by any Act of the General Assembly is hereby conferred on the Appellate Court of Indiana. Said jurisdiction shall be invoked by the Attorney General's removal, pursuant to this Act, of an action from the court in which it is filed, and thereafter the Appellate Court of Indiana shall have jurisdiction of all further proceedings in any case so removed. This grant of jurisdiction shall carry with it complete jurisdiction to hear and determine the entire action in which such relief is demanded, but if it appears to the Appellate Court of Indiana that there is no equity in the demand for injunctive or mandatory relief against any public official, the suit shall be dismissed without prejudice as to the other relief demanded, or it may be remanded to the court from which it was removed, without making any adjudication not necessary to the denial of injunctive or mandatory relief.

SEC. 3. If in any case pending on the date this Act shall become effective or in any case filed thereafter in any court of this state except the Supreme or Appellate Courts, a demand is made for the restraint or injunction of a public official from doing any act authorized by any Act of the General Assembly, whether valid or invalid, constitutional or unconstitutional, or demanding the mandate of any public official to perform any act prohibited by any Act of the General Assembly, whether valid or invalid, constitutional or unconstitutional, the Attorney General shall remove such case to the Appellate Court of Indiana whenever he deems it necessary or desirable for the purposes of the uniform and orderly enforcement and effectiveness of Acts of the General Assembly of state-wide public interest and concern that the case be determined by a court with state-wide jurisdiction.

After removal of the case to the Appellate Court of Indiana, the court from which the case is removed, and the judge thereof, shall have no further jurisdiction in the proceedings, unless the case is remanded or transferred to that Court by the Appellate Court of Indiana pursuant to this Act.

SEC. 4. No cases shall be removed pursuant to this Act before this Act shall have been effective for a period of fifteen (15) days, except as otherwise provided in this Act. The removal of cases pending on the effective date of this Act or within fifteen (15) days thereafter shall be effected by the Attorney General within forty-five (45) days after the effective date of this Act. Thereafter, the Attorney General shall have thirty (30) days after service of notice or a copy of the pleading demanding such relief upon him in which to remove a cause to the Appellate Court of Indiana pursuant to this Act. Such removal shall be effected when the Attorney General files with the Clerk of the Appellate Court of Indiana a verified petition for removal, together with copies of all pleadings, motions, demurrers, orders, injunctions, mandates and order book entries in the cause, and serves notice thereof by first class mail on all parties to such action or on their attorneys of record. Such filing shall constitute a removal of said cause to the Appellate Court of Indiana which shall thereafter have jurisdiction of all further proceedings.

SEC. 5. In any case which has been removed to the Appellate Court of Indiana pursuant to this Act, any party may file a verified petition supported by a brief and serve notice on all other parties, or on their attorneys, requesting the court to remand the case to the court in which it was filed on the ground that the removal is contrary to law in that the Attorney General's determination that it is necessary or desirable for the purposes of the uniform and orderly enforcement and effectiveness of valid acts of the General Assembly of state-wide interest and concern that the cause be determined by a court with state-wide jurisdiction is arbitrary, capricious or illegal. Such petition shall be filed within thirty (30) days after the removal is effected. Petitioner shall be entitled to a hearing before a Commissioner appointed by the Appellate Court of Indiana pursuant to this Act. Said petition shall be granted or denied at the discretion of the Appellate Court of Indiana en banc.

The filing of a petition pursuant to the provisions of this section shall not delay or postpone any other hearings,

arguments, determinations or expirations provided for under other sections of this Act.

SEC. 6. The Appellate Court of Indiana shall adopt and promulgate rules for the exercise of the jurisdiction conferred on it by section 2 hereof. Such rules may, at the discretion of the Appellate Court of Indiana, provide for orders of reference to any judge of a court of inferior jurisdiction to facilitate the taking of evidence and conduct of hearings, including hearings and the taking of evidence incidental to the enforcement of any restraining order, temporary injunction, permanent injunction, or writ of mandamus issued by the Appellate Court of Indiana or its judges. More than one reference may be made simultaneously or successively as the exigencies of the case and the convenience of witnesses and parties may require.

Such rules shall provide for the manner of continuance or expiration of orders issued by the court in which the cause was filed consistent with the provisions of this Act.

SEC. 7. At the time of removal of a case by the Attorney General, the Chief Justice of the Appellate Court of Indiana, or in his absence, the Presiding Justice, shall fix a date and hour not less than three (3) days nor more than seven (7) days after the date of removal, on which oral arguments will be heard and additional affidavits received on the question of whether any restraining order or preliminary mandate issued by the court in which the case was filed shall be continued in effect until the question of granting a temporary injunction or writ of mandate is heard and determined. The court en banc shall hear such arguments and review whatever additional affidavits may be offered by any party, and unless at least five (5) judges who hear such oral arguments sign an order on the day of such argument continuing the restraint or mandate in effect as originally issued or as modified by a new order, all restraint or mandate shall thereupon stand dissolved by operation of law. The presence of less than five (5) judges at the time stated in the order for the argument shall also have the effect of dissolving the restraining order or writ of mandate.

Every continuance of a restraining order or preliminary mandate after oral argument shall contain a statement of the date, time and place of hearing on the question of granting a temporary injunction and the name of a judge of an inferior court who will conduct such hearing as Commissioner of the Appellate Court of Indiana, whose duty it shall be to report the evidence verbatim to the

Appellate Court of Indiana with his recommended findings of fact and conclusions of law within fifteen (15) days of the date set in the order for the hearing.

Any temporary injunction or mandate issued prior to removal shall expire or survive after removal upon the same contingencies and by the same procedures provided for the survival or expiration of restraining orders or preliminary writs of mandate issued prior to removal. Any party may submit to the Appellate Court of Indiana at the oral argument a complete transcript of the evidence on the basis of which the judge or court issued the order or injunction or preliminary mandate being reviewed. Every continuance of a temporary injunction or mandate after oral argument shall contain a statement of the date, time and place of hearing on the question of granting a permanent injunction or writ of mandate, and the name of a judge of an inferior court who will conduct such hearing as Commissioner of the Appellate Court of Indiana, whose duty it shall be to report the evidence verbatim to the Appellate Court of Indiana with his recommended findings of fact and conclusions of law within fifteen (15) days of the date set in the order for the hearing.

Temporary injunctions, permanent injunctions and writs of mandate may be granted or denied by the Appellate Court of Indiana only when sitting en banc.

SEC. 8. If a motion for a new trial is pending at the time this Act becomes effective or is timely filed within fifteen (15) days thereafter, in any case in which a permanent injunction or permanent mandate has been issued in the class of actions subject to this Act by any court other than the Supreme Court or Appellate Court of Indiana, the Attorney General, within twenty (20) days after the effective date of this Act, may remove said case to the Appellate Court of Indiana, and thereafter the Appellate Court of Indiana shall have exclusive jurisdiction to rule on said motion. Removal of such case shall be effected by filing in the office of the Clerk of the Appellate Court of Indiana a verified petition for removal and copies of all pleadings, motions, demurrers, order book entries, and a bill of exceptions containing all the trial evidence. On good cause shown by affidavit by counsel, filing of the bill of exceptions can be delayed thirty (30) days after removal, which time may be extended further by the Chief Justice of the Appellate Court of Indiana, or, in his absence, the Presiding Justice, on good cause shown.

In such cases in which a motion for a new trial has not been filed, but the time for filing such a motion has not expired within fifteen (15) days after the effective date of this Act, the Attorney General may remove said case in the same manner as he may remove a case in which a motion for a new trial has been filed, and when removal is effected the motion may be filed in the Appellate Court of Indiana with or after removal, but within the time now allowed by law.

SEC. 9. No petition to transfer to the Supreme Court may be filed in an action removed to the Appellate Court of Indiana pursuant to this Act prior to a grant or denial of a permanent injunction or writ of mandate or other final adjudication. A final adjudication may be reviewed by the Supreme Court in the same manner and following the same procedures required for transfer in other civil cases.

SEC. 10. The Appellate Court of Indiana is hereby authorized to issue all writs and orders necessary to effectuate its jurisdiction under this Act.

SEC. 11. Procedures and practices, including fees and costs, to the extent not otherwise provided in this Act and in the rules of the Appellate Court of Indiana, shall be governed by the existing statutes and the rules governing civil actions in circuit courts, as they may be amended. Process shall be issued by the Clerk of the Appellate Court of Indiana and may be directed to the sheriff of any county, but any writ (including summons, subpoena, and all court orders and notices of hearing) may be served by any officer in the state now authorized by law to serve the process of any court and, when now permitted by law or when ordered by a judge of the Appellate Court of Indiana, by any competent person. Fees now required by law to be paid into any fund of the county, in the case of circuit court actions, when paid for services performed by a circuit or county officer, or other local officer, shall be paid into such fund of the officer's county. Clerk's fees shall be governed by rules of the Appellate Court of Indiana. A judgment of the Appellate Court of Indiana shall become a lien on real estate in any county only when a certified copy thereof is filed with the clerk of the circuit court for that county and entered in the judgment docket of that court. The clerk of the circuit court of each county where the judgment is so entered shall issue writs of execution thereon which shall be executed by the county sheriff, all in the manner now provided by law for circuit court judgments.

SEC. 12. As used in this Act, the words "mandamus" or "mandate" or "writ of mandamus" or "mandatory relief" shall mean and include writs of mandamus, mandatory orders and mandatory injunctions, final or preliminary.

As used in this Act, the words "injunctive relief" shall mean and include restraining orders, temporary injunctions and permanent injunctions.

SEC. 13. Nothing herein contained is intended to have the effect of withdrawing from the Supreme Court or limiting any jurisdiction the Supreme Court now possesses.

SEC. 14. All laws and parts of laws in conflict herewith are hereby repealed.

SEC. 15. Whereas an emergency exists for the immediate taking effect of this Act the same shall be in full force and effect from and after its passage.

APPENDIX "B."

Pertinent part of "Temporary Restraining Order" issued by the Judge of the Superior Court of Marion County, Room No. 1.

\*    \*    \*    \*    \*

NOW, THEREFORE, BE IT ORDERED That the Defendants, H. Dale Brown, as Chairman, Marion County Republican Central Committee, and as representative of the Republican County Chairmen in Marion, Allen, Delaware, Elkhart, Lake, LaPorte, Madison, St. Joseph, Vanderburgh, Vigo and Tippecanoe Counties, the defendant, James W. Beatty, as Chairman, Marion County Democrat Central Committee and as representative of the Democrat County Chairman in Marion, Allen, Delaware, Elkhart, Lake, LaPorte, Madison, St. Joseph, Vanderburg [Vanderburgh], Vigo and Tippecanoe counties, and their respective precinct committeemen, vice committeemen and deputy registration officers, be, and they hereby are, restrained from performing any act pursuant to the registration provisions of the Indiana Election Code established by Acts 1965, Chapter 261, Section 9, until the matter of an injuncion pendente lite may be heard by this court.

BE IT FURTHER ORDERED That the matter of the issuance of an injunction pendente lite herein be, and it

hereby is, set for hearing by this court on Friday, the 14 day of January, 1966, at 10 o'clock A. M.

BE IT FURTHER ORDERED, That this order shall be effective upon the filing by the plaintiff of a bond in the sum of $1,000.00 with Hartford Accident & Indemnity Company as Surety.

BE IT FURTHER ORDERED, that the Sheriff of Marion County shall serve copies of this order upon the defendants herein as follows:

James W. Beatty, c-o Marion County Democrat Central Committee, 220 E. Ohio St., Indianapolis, Indiana or wherever he may be found in the county.

H. Dale Brown, c-o Marion County Republican Central Committee, 312 Ober Building, Indianapolis, Indiana or wherever in Marion County he may be found.

John R. Maze, c-o Marion County Board of Registration, City-County Building, Indianapolis, Indiana or wherever in Marion County he may be found.

and shall make due return thereof.

(DISSENTING OPINION)

MOTE, J.—I wish to dissent herein, and in support of my views, I cite my Dissenting Memorandum in *Kriner* v. *Bottorff, Secretary of State of Indiana, et al.* (1966), 138 Ind. App. 195, reported in Volume 7, Number 10, p. 390, advance sheets, Indiana Decisions.

Again, not only do I think Senate Enrolled Act No. 475, Second Special Session, Indiana General Assembly 1965, to be constitutionally invalid for the reasons stated in *Kriner*, but I think it is also invalid for various other reasons asserted by respondents herein, concerning which I think no useful purpose would be served by extension of my remarks relative thereto.

Also, I am of the opinion that there is nothing before this Court for decision, inasmuch as the petition below and the petition to transfer to this Court, and all other proceedings, should have been filed in the name of the State of Indiana, on

the relation of a proper person such, perhaps, as the Attorney General of Indiana.

In my opinion this cause should be remanded forthwith to the trial court who then should hear the matter on its merits.

## DISSENTING OPINION

CARSON, J.—The statement of facts, the record and the issues presented as stated in the majority opinion are correct.

In the pleading filed by the respondent several issues are raised questioning the jurisdiction of this court to act in this case under the commonly called "transfer act." The point which I think requires consideration is number 3 which contends that the restraining order issued by the Superior Court of Marion County, Room 1, did not affect a "public official" as is required by the "transfer act." Respondent argues that James Beatty and H. Dale Brown as political county chairman are not "public officials"; that deputy registration officers are not "public officials."

As I recall in the oral argument, the Attorney General took the position that the expression "public official" would include many persons on the public payroll including even policemen and firemen. He urged the court to adopt this broad definition of "public official." Our Supreme Court in the case of *City of Huntington* v. *Fisher* (1942), 220 Ind. 83, 40 N. E. 2d 699, held that firemen and policemen are employees and not public officers. I cannot agree with this position of the Attorney General and in one instance his argument was inconsistent. He argued that the legislature passed the "transfer act" to correct potential evils similar to the restraining order issued by the court of Marion County which tied up collection of the sales tax, which action he claimed cost the State of Indiana in excess of one million dollars in revenue. It is significant that that action was against the Governor of the State of Indiana, the Attorney General and the revenue commissioner. I will concede that elected officials of the state level,

and their immediate deputies or department heads charged with the responsibility of administering the law at the state level should properly be classed as public officials. I cannot see any logical analogy between their responsibilities and that of a deputy registration clerk appointed upon recommendation of a political county chairman. When I apply the rule of statutory interpretation that a court must consider the mischief at which the statute is aimed I do not think the interpretation of the Attorney General is tenable.

Several Indiana cases have set out the tests for determining who is and is not a public officer. In the case of *Blue* v. *State ex rel. Brown* (1934), 206 Ind. 98, 121, 188 N. E. 583, we find the following language:

> "The persons selected to assist in the registration can not be classified as officers. They are merely temporary appointees. They do not exercise rights and privileges to which every person is entitled and therefore do not come within the meaning of section 23 Art. 1."

Following this case in the case of *Harrell* v. *Sullivan* (1942), 220 Ind. 108, 122, 40 N. E. 2d 115, 120, our Supreme Court said:

> "Political parties have been the subject of State recognition and regulation in one form or another for many years. Laws pertaining to that subject are enacted pursuant to the police power of the State but do not have the effect of making political parties administrative agencies of the government."
>
> "It is likewise generally agreed that party committeemen do not become public officers by reason of the fact that they are elected at a statutory primary."

While this case was overruled by *State ex rel. Buttz* v. *Marion Cir. Ct.* (1947), 225 Ind. 7, 72 N. E. 2d 225, it was later cited with approval by the Supreme Court in *State ex rel. Kiser etc.* v. *Millspaugh, etc.* (1961), 241 Ind. 656, 175 N. E. 2d 13.

In the case of *State ex rel. Kiser etc.* v. *Millspaugh etc.*, supra, the court said at page 659:

"The office of county chairman of a political party is not a privilege or right conferred by a special grant of the State, but by the county precinct representatives of the party and it is, therefore, not a franchise[2] within the meaning of the statute.[1]

The county chairman of a political party is the chief officer of the party in the county. Although his duties are in some measure regulated by statute, his principal and primary duties and powers inhere within the party, and those added by statute are merely incidental to his party function. He does not perform any of the functions of the legislative, judicial or executive departments of the State Government, nor is he vested with any authority pertaining to the sovereignty of the State. His is a party employment as distinguished from a public charge or employment. *Commonwealth ex rel. Koontz* v. *Dunkle* (1947), 355 Pa. 493, 50 A. 2d 496, 497, 169 A. L. R. 1277. Cf.: *Wells* v. *State ex rel.* (1911), 175 Ind. 380, 94 N. E. 321, Anno. Case. 1913C 86; *State ex rel. Black* v. *Burch* (1948), 226 Ind. 445, 456, 80 N. E. 2d 294.

"For the foregoing reasons the chairman of a political party is, in our judgment, not a public office within the meaning of § 3-2001, supra."[3]

The case of *Bunn et al.* v. *The People ex rel.* (1867), 43 Ill. 397, involved a *quo warranto* proceeding against the plaintiffs in error instituted by the defendant attacking the constitutionality of an act of the legislature of 1867. The act under consideration used the term officers in describing men who were appointed to serve as commissioners for the location of the new state house. *The court pointed out that while it could be recognized that every office was an employment that it did not follow that every employment was an office* and further that a man may be employed to do or perform a service without becoming an officer. In discussing the work to be performed by the individuals the court at page 405 said:

"In fact there are no general duties imposed by the act in question on these appointees; they have only one single special duty to perform, and that is, to superintend the erection of a State house, and when that is performed their functions, ipso facto, are at end."

"So far as we have any knowledge on this subject, or are enabled to judge from the facts of contemporaneous history, no one has ever supposed the legislature had not full power to appoint and employ all such agents as might be deemed necessary by them to perform duties not of a permanent, but of a transient and incidental character, such as we see in abundance in our statute books. No one has ever exalted such employees to the position of an officer, though their duties might require months or years for their full performance. There is no enduring element in these employments, nor designed to be; the duty being performed, the place is vacant by the very fact of performance."

In *Brown* v. *Russell* (1896), 166 Mass. 14, 25, 43 N. E. 1005, 1010, the court in discussing certain civil service employment and the application of preference to veterans discussed the difference between an employee and a public officer stating:

"There are many employments by the commonwealth, or by the cities and towns of the Commonwealth which do not constitute the employe a public officer. The work of the commonwealth and of the cities and towns must be done by agents or servants and much of it is of the nature of an employment. It is sometimes difficult to make the distinction between a public officer and an employment, yet the title of 'public officer' is one well known to the law, and it often is necessary to determine what constitutes a public office. Every copying clerk or janitor of a public building is not necessarily a public officer."

See also *State ex rel. Wickens* v. *Clark* (1935), 208 Ind. 402, 196 N. E. 234.

I think it is significant to point out that the deputy registration personnel appointed under the provisions of Ch. 261, § 9 of the Acts of 1965 are required to perform a specific and very limited function for a very limited period of time.

"The term of each deputy registration officer shall expire on the date of the following primary election. The appointment of such additional deputy registration officers shall be cancelled by death or resignation of the appointee or by recommendation of revocation by the chairman of the same political party affiliation as the appointee."

When we consider that the legislature in passing a new statute is presumed to have had in mind the correction of a past evil, the adoption of judicial opinion or the abrogation thereof, or the creation of new rights or remedies required by changing social conditions, and apply those factors to the "transfer act," it becomes apparent that the second Special Session of the 1966 General Assembly was considering the sales tax litigation discussed by the Attorney General. I therefore cannot believe that the legislature was intending to go so far as to encompass "deputy registration officers" at the county level within the term "public official" as used in the transfer act.

I would dissolve the writ of prohibition heretofore issued by the Appellate Court and remand the action to the Marion Superior Court for such proceedings as the Judge thereof might deem just and proper.

ORIGINAL ACTION

(DISSENTING OPINION)

HUNTER, J.—I dissent from the majority opinion for the following reasons.

The only question before this court may be stated as follows. Does this court have the jurisdiction to determine the constitutionality of the removal statute? This question is the major premise of the issue before this court. If this question is not answered in the affirmative, this case must be transferred to the Supreme Court.

It should be noted that on January 25, 1966 the relator, James E. Ulrich and certain of the respondents appeared specially and specifically raised the question of the jurisdiction of this court to pass on the constitutionality of the so-called "Removal Act."

They requested this court to transfer the cause to the Supreme Court. In so doing, the said respondents have directly challenged the constitutionality of said Act with specific

reference to Article I, Section 12 and Article IV, Sections 22(3), 22(4), and 23 of the Constitution of Indiana and the Fourteenth Amendment to the Constitution of the United States. The majority opinion in my view erroneously attempts by the device of assuming this court's jurisdiction to determine whether or not this court has jurisdiction to decide the constitutionality of the removal statute and I quote from said opinion:

> "Since jurisdiction of the subject-matter cannot be waived, it is our duty to determine whether jurisdiction, in fact, exists." (citing cases)

Thus, by a very simple statement the majority opinion disposes of the question of whether or not this court has jurisdiction to determine its jurisdiction to rule upon the constitutionality of the Act in question. It also cites the Supreme Court case of *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 498, 29 N. E. 2d 405 and says we are called upon to construe the Constitution of the State of Indiana as a necessary *adjunct to the judicial administration of justice.* In support of the proposition, the majority cites the case of *In re Talbot* (1915), 58 Ind. App. 426, 108 N. E. 240. The applicable part of the opinion as cited is quoted as follows:

> ". . . If any jurisdiction is conferred on the respective judges of this court by the act in question, *it is original* and not *appellate,* and hence such jurisdiction is not controlled by §§ 1391, 1392 Burns 1914, *supra.*" (my emphasis)

The opinion further cites in support of its assumption of jurisdiction cases involving administrative agencies of state government and cites the *Warren* v. *Indiana Telephone Co.* case (1940), 217 Ind. 93, 26 N. E. 2d 399. The applicable part of this opinion is quoted as follows:

> "While the Appellate Court is primarily a court of appeals, it is a creature of the Legislature, and it was well within the power of the General Assembly to give it orig-

*inal jurisdiction to review* the proceedings of the *Industrial Board."* (my emphasis)

In the *Warren* case, *supra,* the court discusses the right of the General Assembly to confer jurisdiction upon the Appellate Court to review the proceedings of the Industrial Board and has declared the Appellate Court in such a case to be the first court of judicial review of the record and orders of an administrative agency.

Likewise in the cases of *Chicago, etc. R. Co.* v. *Railroad Com., etc.* (1906), 38 Ind. App. 439, 457, 78 N. E. 338; *Lake Erie, etc., R. Co.* v. *Watkins* (1902), 157 Ind. 600, 607, 62 N. E. 443; *In re Petitions to Transfer Appeals* (1931), 202 Ind. 365, 385-386, 174 N. E. 812.

It should be noted however that there is no provision in the so-called removal statute granting any person or the Attorney General the right to commence an original or initial action in the Appellate Court.

It should require no citation of authority to establish the fact that Superior Court Room No. 1 of Marion County, Indiana is a *nisi prius* court of general jurisdiction and as such is an integral part of the judicial department of the State of Indiana. It is not an administrative board or agency. Such boards, bureaus and commissions perform only limited and specific *quasi* judicial functions as distinguished from the exercise of purely judicial functions. Therefore, as has been stated appeals so-called from state boards, bureaus and agencies to the Appellate Court are in the nature of proceedings in judicial review as indicated in the *Warren* v. *Indiana Telephone Co.* case, *supra,* and the Board of Review cases cited in the majority opinion. Hence, the majority assumes the Appellate Court in this instance to be a court of original jurisdiction.

In the instant case there is no provision in the removal act which would have permitted any citizen to seek direct relief in the Appellate Court as a court of initial, original juris-

diction, by way of injunctive process, to restrain or prevent a public official from performing an unconstitutional act pursuant to an unconstitutional statute. It should be noted that the Act itself only confers jurisdiction upon the Attorney General to remove a cause to this court where a court of general jurisdiction has already passed upon the question of the performance of an unconstitutional act by an official or officials pursuant to a statute found by said court to be unconstitutional, or where an action has been filed pursuant to and seeking relief as outlined in Section 3 of the Act.

Therefore, it seems conclusively clear that no matter what the language employed in the statute itself that the instrumentality of the removal statute as utilized by the Attorney General in the instant case must be construed to be an *appeal from a judgment and order* of a duly constituted court exercising general jurisdiction.

The history of the acts defining the jurisdiction of the Appellate Court from the date of its inception in 1891 provides as follows: Acts 1891, ch. XXXVII, § 1 (approved February 28, 1891):

"SECTION 1 . . . Provided, however, that if the *validity of a statute of this State,* or the United States, *is involved,* said Court shall so certify, and thereupon the transcript and all papers in such cause shall be transmitted to the Supreme Court, with such certificate, and filed therein, and all proceedings conducted thereafter as if said cause had been originally appealed to the Supreme Court." (my emphasis)

Acts 1893, ch. XXXII, § 1 (approved February 16, 1893) provides in part:

"In all cases where there is jurisdiction the decisions of the Appellate Court shall be final. The exceptions to which the foregoing grant of jurisdiction is made are these:

First. The Appellate Court shall not have jurisdiction of *any case where the constitutionality of a statute, Federal or State,* or the validity of an ordinance of a municipal corporation is in question *and such question is duly presented.*" (my emphasis)

Acts 1901, ch. CCXLVII, § 8 (approved March 12, 1901) provides as follows:

*"Every case in which there is in question, and such question is duly presented,* either the validity of a franchise, or the validity of an ordinance of a municipal corporation *or the constitutionality of a statute, State* or Federal, or the proper construction of a statute, or rights guaranteed by the State or Federal Constitution, and which case would be otherwise unappearable (unappealable) by virtue of Section six (6) or Section seven (7), shall be appealable directly to the Supreme Court, for the purpose of presenting such question only." (my emphasis)

Acts 1907, ch. 148, § 9 (approved March 9, 1907) provides: (Appeals—Supreme and Appellate Courts).

". . . Hereafter all appeals in appealable cases in the following classes shall be taken directly to the supreme court, viz.:

First. All cases in which there is in question, and such question is duly presented, either the validity of a franchise or the validity of an ordinance of a municipal corporation, *or the constitutionality of a statute,* state or federal, or the rights guaranteed by the state or federal constitution." (my emphasis)

Thus, it appears to me that the clear and plain intent of the Legislature in all the various enactments conferring jurisdiction of causes in this court have carried with them a very specific prohibition against the right to determine the constitutionality of a statute when such question is direct, duly presented and explicit in the pleadings before this court. Indeed, Acts 1965 (2nd Spec. Sess.), ch. 7, § 13 further clarifies the determination of the issues presented in this case in the following manner:

"Nothing herein contained is intended to have the effect of withdrawing from the Supreme Court or limiting any jurisdiction the Supreme Court now possesses."

It would seem that the entire opinion of the majority is based on the premise that by the terms of the removal statute

this court is one of original jurisdiction. The reasoning of the majority in syllogistic form can be simply stated as follows:

    (1)   A court of original jurisdiction can decide constitutional questions.

    (2)   Under the removal statute this court is one of original jurisdiction.

    (3)   Therefore, this court may decide the constitutional question.

However, it is my belief that the majority opinion is an example of erroneous syllogistic reasoning in that an erroneous premise can only lead to an erroneous conclusion. As previously noted and for the reasons stated hereinbefore, this court is not a court of initial, original jurisdiction under the removal statute. Consequently, as the majority has erred in one of its premises, they have also erred in their conclusion.

The proper form of this attempted reasoning should be as follows:

    (1)   A court of original jurisdiction may decide constitutional questions.

    (2)   Under the terms of the removal statute we are not a court of original jurisdiction.

    (3)   Therefore, we may not decide the constitutional question.

For all the foregoing reasons this court should transfer this cause to the Supreme Court for determination of the constitutionality of the "Removal Statute."

Carson, J., concurs in this dissent in addition to the reasons expressed in separate dissent filed by him.

### ON PETITION FOR REHEARING.

FAULCONER, J.—Respondents, Superior Court of Marion County, Room No. 1, and Honorable Charles C. Daugherty, as Judge thereof, and plaintiff, James E. Ulrich, have filed herein their joint petition for rehearing contending the majority opinion of this court erred 1) in contravening ruling prece-

dents of the Supreme Court of Indiana; and, 2) in erroneously deciding certain new questions of law.

Respondents and plaintiff, under Part I of their petition, list ten cases by title and citation only, and fail to inform this court which issue in the original action—which ▉ presented many issues for this court's determination—contravened which ruling precedents contained in which of the ten cases cited. By this part of said petition this court is presented with the task of application and research which, under our rules, is the burden of the petitioners. 2 F. W. & H., Ind. Tr. & App. Pract., § 2833, Comment 3, p. 398.

In Part II of said petition respondents and plaintiff merely repeat, in question form, those issues heretofore presented by them and determined by this court in its opinion on the merits.

Respondents and plaintiff have not favored us with a brief in support of their petition for rehearing, and no application of appropriate authority in support of their contention has been set forth in their petition.

Respondents and plaintiff, by their joint petition for rehearing, have failed to present to this court anything other than their conclusions that the determination by this court of the issues originally presented were erroneous and we are, therefore, of the opinion that such petition for rehearing is not meritorious and should be denied.

Petition for rehearing denied.

Smith, C. J., Wickens, P. J., Bierly, J., and Prime, J., concurs. Hunter, J., dissents with opinion. Mote, J., and Carson, J., dissent without opinion.

ON PETITION FOR REHEARING.

HUNTER, J.—I dissent from the denial of the petition for rehearing for the reasons stated in my dissenting opinion as filed herein on May 27, 1966 reported in 216 N. E. 2d 737.

It is therefore my opinion that the petition for rehearing should be granted.

NOTE.—Reported in 216 N. E. 2d 737. Rehearing denied in 217 N. E. 2d 858.